United States Department of Justice
Office of the United States Trustee
1100 Commerce St.  Room 976
Dallas, Texas 75242
(214) 767-1075

Erin Marie Schmidt,
for the United States Trustee
Erin.Schmidt2@usdoj.gov

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| | § | |
| **Vision2Systems, LLC,** | § | **Case No. 25-40583-MXM-11** |
| | § | |
| **Debtor.** | § | |

**United States Trustee's Motion to Convert to Chapter 7 under 11 U.S.C. § 1112(b), or in the Alternative, for the Appointment of a Chapter 11 Trustee under 11 U.S.C. § 1104(a)**

TO THE HONORABLE MARK X. MULLIN, U.S. BANKRUPTCY JUDGE:

Lisa L. Lambert, the United States Trustee for Region 6 ("United States Trustee"), moves to convert the above-referenced Debtor to chapter 7 under 11 U.S.C. § 1112(b). In the alternative, the United States Trustee moves for an order directing the appointment of a chapter 11 trustee under 11 U.S.C. § 1104(a). The United States Trustee would respectfully show:

### SUMMARY

Vision2Systems, LLC ("Debtor") used to provide online payment processing services to member churches but stopped operations in October 2024 after failing to turn over all reported donations to their church clients.  The Debtor filed this case to liquidate its few remaining assets and centralize ongoing litigation, and not to reorganize or restart its business operations.  The Debtor blames its cash flow problems on several outside factors including 1) advancing donations to member churches on transactions that were later reversed, 2) former payment

processor Wells Fargo's failure to timely send error files to the Debtor in the proper format, and 3) over withholding settlement fees on donations funded by certain credit cards, rather than the Debtor's own failure to properly account for the donations.

As a result of these accounting irregularities, by the Petition Date, the Debtor and its two insiders, Paul Baldwin ("Mr. Baldwin") and Carl Tierney ("Mr. Tierney"), were embroiled in four separate lawsuits with member churches alleging, among other things, breach of fiduciary duty and financial mismanagement. Factual issues remain as to whether the plaintiffs in these lawsuits were underpaid as reflected in prepetition account statements, or whether a recent internal accounting and reconciliation conducted by the Debtor's insiders accurately reflects the Debtor's claim that certain churches owe more than $6 million.

Cause exists to convert this case to chapter 7 given that 1) the Debtor is no longer in business with neither income nor employees and 2) this case appears to be a bad faith filing. In the alternative, cause exists for the Court to direct appointment of a chapter 11 trustee given that 1) the Debtor's management committed fraud, engaged in gross mismanagement, or were just incompetent prior to the filing of the case and 2) conflicts of interest exist between the Estate and the insiders.

### Jurisdiction

1. The Court has subject matter jurisdiction under 28 U.S.C. § 1334, 28 U.S.C. § 157(a)(1), and the standing order of reference. Conversion or dismissal under 11 U.S.C. § 1112(b) or the appointment of a chapter 11 trustee impacts case administration and therefore are core matters that the Court has the power to resolve. 28 U.S.C. § 157(b)(2)(A).

**FACTS**

**Debtor files chapter 11 bankruptcy**

1.      On February 19, 2025, ("Petition Date"), the Debtor filed a voluntary chapter 11 petition in the Northern District of Texas, commencing case number 25-40583-MXM-11.

2.      The Debtor is a for-profit business.

3.      Messrs. Baldwin and Tierney are the Debtor's managers.  ECF 1 at 5.

4.      Neither Messrs. Baldwin nor Tierney are accountants.

5.      Mr. Baldwin signed the Petition under penalty of perjury.  ECF 1 at 4.

6.      The United States Trustee has appointed an official committee of unsecured creditors ("UCC"). ECF 42 and 51.

7.      Both Messrs. Baldwin and Tierney appeared and testified under oath at the original March 21, 2025, § 341 meeting ("First § 341") and continued April 4, 2025, continued § 341 meeting ("Second § 341").

**2012-2024: Debtor processes online donations for churches**

8.      From 2012 through 2024, the Debtor provided member churches a digital platform through which congregants could donate funds to support their churches and ministries.  ECF 5[1] at 2-3.

9.      The Debtor's digital platform allowed congregants to donate funds online via credit card or other online cash apps; the Debtor's platform also allowed churches to immediately process congregants' checks and church envelopes after services.  *Id.* at 2.

10.     Clients entered into bifurcated services and account agreements as follows:

---

[1] *Declaration of Paul Baldwin in Support of Debtor's Chapter 11 Petition and Requests for First Day Relief* [ECF 5].

a. A software agreement between the Debtor and client which permitted the client to use the Debtor's proprietary software and platform; and

b. A payment services agreement between the Debtor, client, and a financial institution ("Payment Processor") which, among other things, authorized the Debtor and Payment Processor to set up settlement accounts ("Settlement Account") in each member church's name.

11. Wells Fargo was the Payment Processor through October 2023, at which time the Debtor transitioned to a new Payment Processor. ECF 5 at 4.

12. Credit card settlements and ACH payments would initially be deposited into the client's Settlement Account pending final resolution of the funds.

13. Once payments were finalized, the Debtor would transfer funds from the Settlement Account into the client's designated deposit account, minus any fees.

14. To facilitate the immediate transfer of donations to churches, the Debtor used a "margin account" to cover the gap period between the receipt of congregants' payments and the actual transfer of funds from congregants' money sources to the Debtor's Wells Fargo account.  ECF 5 at 3-4.

**August 2022 – October 2024: Debtor discovers it has cash flow issues**

15. In August 2022, Wells Fargo informed the Debtor that it was exiting the processing business and that the Debtor would need to find another Payment Processor.  ECF 5 at 4.

16. Over the next year, the Debtor "rework[ed] its software and integrations" in anticipation of switching to a new Payment Processor. *Id.*

17. During this time, the Debtor discovered that the margin account was "cover[ing]-up situations where transactions were reversed and money initially transferred to the Debtor's account, was subsequently withdrawn from its account in the clearance process." *Id.* at 3.

18. The Debtor hit another crisis point in October 2023 when, after switching to a new Payment Processor, the Debtor was not able to process check payments for two weeks. *Id.* at 4.

19. Several churches stopped using the Debtor's digital platform during this time, which in turn revealed "cash-flow shortfalls in settling transactions with its customer churches." *Id.* at 4.

20. Meanwhile, the Debtor also learned that it had incorrectly withheld American Express credit card processing fees when settling accounts with member churches, which led to "further complications in the accounting." *Id.* at 5.

21. Throughout this time, the Debtor was sending statements to several member churches indicating that the Debtor had not turned over all donations from their respective congregants.

22. The Debtor finally stopped doing business in October 2024.

**October 2024 through January 2025: former member churches sue Debtor and insiders**

23. As of the Petition Date, the Debtor was a defendant in four lawsuits:

   a. *Saddleback Valley Community Church v. Vision2 Systems, et al.,* Case No. 3:24-cv-02700 (N.D. Tex.)("Saddleback Suit")

   b. *The Crossing Church v. Vision2Systems, et al,* Case No. DC-24-18092 (116th Jud. District Court for Dallas County)("Crossing Church Suit").

   c. *Resurrection Metropolitan Community Church v. Vision2Systems, LLC, et al,* Cause No. 2024-69700 (234th District Court Harrison County)("Resurrection Suit"); and

d. *Chrisian Fellowship Church v. Vision2Systems, LLC, et al,* Cause No. DC-25-00011 (68th District Court Dallas County)("Christian Fellowship Suit").

24. Northridge Church subsequently intervened as a plaintiff in the Crossing Church Suit. ECF 5 at 6.

25. Messrs. Tierney and Baldwin are also defendants in each of these lawsuits.

26. These four lawsuits allege, among other things, breach of contract, breach of fiduciary duty, unjust environment, and fraud. ECF 5 at 5-7.

**October 2024 through March 2025: Mr. Tierney's account reconciliation**

27. Before late 2024, the Debtor had sent statements to member churches indicating that the Debtor owed the churches money.

28. In late 2024, the Debtor informed Saddleback Valley Community Church that it had overpaid them and certain other churches.

29. From fall 2024 through March 2025, Mr. Tierney reviewed electronic case files to reconcile which churches have been overpaid or underpaid.

30. The Debtor now avers that it overpaid certain churches $6,360,317.00. ECF 61 at 41.

31. The Debtor has not engaged with an outside accountant or expert to review the Debtor's electronic case files.

**Debtor's assets**

32. The Debtor averred on Schedule A/B that, as of the Petition Date, it had no real estate and $121,388.34 in personal property. ECF 61 at 2.

33. The Debtor's personal property consists of $47,513.34 in cash; $5,200.00 in accounts receivables; $675.00 in office furniture; and $68,000.00 in future revenue from a contract with YourGiving, Inc. ECF 61 at 5; 8.

34. Some of the assets listed on Schedule A/B were valued either at zero or "unknown" value.

35. One of these assets are the Debtor's Settlement Accounts with former Payment Processor Texas Capital Bank, which have balances ranging from zero to $34,324.95.[2] ECF 61 at 3; 37-38.

36. When questioned at the April 4, 2025, § 341 meeting whether these balances belonged to the Debtors or its former clients, Mr. Tierney admitted that the Debtor is still determining whether the Debtor's bankruptcy estate has any interest in these funds.

37. The Debtor also scheduled potential causes of action of an "unknown" value against Wells Fargo and "contingent and unliquidated claims or causes of action" against its former member churches. ECF 61 at 6; 39-41.

38. At the First § 341, Mr. Tierney explained that the estimated amounts owed by these churches were not offset by the claims owed to them on Schedule E/F.

39. The Debtor further states that these claims against former member churches may be worth up to $6,360,317.00. ECF 61 at 6.

Debtor's liabilities

40. The Debtor averred on Schedules D and E/F that, as of the Petition Date, it had $2,208,074.74 in secured claims, no priority unsecured debt, and $5,875,948.41 in general unsecured claims. ECF 61 at 2.

41. Most of the creditors listed on Schedule E/F are former member churches who are owed unpaid donations.

UST still investigating

---

[2] Most of the accounts have zero balances while the "Consolidated Treasury" account contains $34,324.95.

42. The United States Trustee is continuing his investigation into these facts and will supplement this Motion as necessary before the hearing.

## ARGUMENT

**Cause exists to convert case to chapter 7**

Statutory Authority

43. Section 1112(b) of the Bankruptcy Code provides that, "[e]xcept as provided in . . . subsection (c) . . . the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause. . . ." 11 U.S.C. § 1112(b)(1). Under § 1112(c), the court cannot covert a case to chapter 7 if the debtor is a non-profit corporation, but the court must still dismiss the case if cause is established. *Id.* § 1112(c).

44. Section 1112(b) places the initial burden of establishing "cause" on the movant. *Id.*; *see also In re Briggs-Cockerham, L.L.C.*, No. 10-34222-BHJ-11, 2010 WL 4866874 at *4 (Bankr. N.D. Tex. Nov. 23, 2010). If cause is established, the burden shifts to the debtor to prove that he or she falls within the § 1112(b)(2) "unusual circumstances" exception to § 1112(b)(1)'s mandatory conversion. 11 U.S.C. § 1112(b)(2).

Continuing loss to or diminution of the estate and the absence of any likelihood of reorganization

45. The Court may convert a case to chapter 7 for "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of reorganization." 11 U.S.C. § 1112(b)(2)(4)(A). If the movant establishes cause for conversion or dismissal under § 1112(b)(4)(A), "conversion or dismissal becomes mandatory because § 1112(b)(2) does not provide an exception to conversion or dismissal for cause found under § 1112(b)(4)(A)." *In re Ford Steel, LLC,* 629 B.R. 871, 879 (Bankr. S.D. Tex. 2021).

46.     "[C]ourts have held that post-petition negative cash flow and an inability to pay current expenses evidence the continuing losses required section 1112(b)(4)(A)." *In re Sakon,* 617 B.R. 7, 15 (Bankr. Conn. 2020)(holding that first and second prongs of § 1112(b)(2)(4) were met given that debtor's monthly income not sufficient to pay post-petition expenses and because debtor had no operating business).

47.     The Debtor filed chapter 11 bankruptcy with only $47,513.34 in its Chase Bank operating account.  ECF 61 at 8.   While the Debtor listed amounts in its Settlement Accounts, it is not clear whether these funds belong to the estate or member churches.  Meanwhile, the Debtor's only source of revenue might be $68,000.00 in future revenue from YourGiving.Inc.  ECF 61 at 5.   These funds will dwindle as the Debtor accrues obligations for such expenses as professional fees for both Debtor's and UCC's counsel and United States Trustee quarterly fees.  It is also not clear any plan will be able to meet the "best interest of creditors" test under 11 U.S.C. § 1129(a)(7).  Meanwhile, the Debtor has no reasonable likelihood of reorganization given that it stopped operating in October 2024 and has no employees.  The Debtor is not seeking to restart its business, but to collect on outstanding accounts receivables and/or pursue chapter 5 causes of action, core functions of chapter 7 trustees.  Cause exists to convert this case to chapter 7.

 Lack of good faith

48.     This case should also be converted for lack of good faith. A lack of good faith in filing a Chapter 11 case constitutes cause for conversion of the case under 11 U.S.C. §1112(b)(1). *Humble Place Joint Venture v. Fory (In re Humble Place Joint Venture),* 936 F.2d 814 (5th Cir. 1991). The Fifth Circuit observed that the Bankruptcy Code is "endowed with requirements of good faith in the construction of many of its provisions," and "[e]very bankruptcy statute since 1898 has incorporated literally, or by judicial interpretation, a standard of good faith for the commencement,

prosecution, and confirmation of bankruptcy proceedings." *Little Creek Dev. Co. v. Commonwealth Mortgage Corp. (In re Little Creek Dev. Co.)*, 779 F.2d 1068, 1071-72 (5th Cir. 1986).

49.    Like the *Little Creek* debtor, the Debtor has no ongoing business, no employees, no cash flow, and "no available sources of income to sustain a plan of reorganization." 779 F.2d at 1073. As of the Petition Date, the Debtor was fighting four separate lawsuits in which the plaintiffs were alleging, among other things, breach of fiduciary duty, fraud, and conversion. Questions arise as to the accuracy of the Debtor's most recent reconciliation of its accounts given that it was done by Mr. Tierney, who is a co-defendant in these lawsuits and therefore also subject to these serious allegations.  Creditors and the estate would benefit from conversion of the case to chapter 7 so that an independent trustee may independently verify this reconciliation and, if necessary, pursue chapter 5 causes of action.

**In the alternative, cause exists for the appointment of a chapter 11 trustee**

50.    Section 1112(b)(1) provides that the Court may also direct the appointment of a chapter 11 trustee for cause if "in the best interests of creditors and the estate." 11 U.S.C. § 1112(b)(1). Should the Court determine that conversion of this case to chapter 7 is not in the best interests of creditors or the estate, the Court should direct the appointment of a chapter 11 trustee both for cause and because such appointment is in the best interests of creditors and the estate under 11 U.S.C. § 1104(a)(1) and (a)(2).

51.    Section 1104(a) provides in pertinent part:

    (a) At any time after the commencement of the case but before confirmation of a
        plan, on request of a party in interest or the United States trustee, and after
        notice and a hearing, the court shall order the appointment of a trustee—

            (1) for cause, including fraud, dishonesty, incompetence, or gross
            mismanagement of the affairs of the debtor by current management, either

before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor; or

(2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor.

11 U.S.C. § 1104(a).

Cause exists for appointment of a chapter 11 trustee

52.      Through section 1104(a)(1) of the Bankruptcy Code, Congress has mandated that a chapter 11 debtor-in-possession, who acts as a fiduciary of the bankrupt estate, be an *honest broker.  See Wolf v. Weinstein*, 372 U.S. 633, 651 (1963) (willingness of courts to leave debtors in possession "is premised upon an assurance that the officers and managing employees can be depended upon to carry out the fiduciary responsibilities of a trustee"); *In re V. Savino Oil and Heating Co.*, 99 B.R. 518, 526 (Bankr. E.D.N.Y. 1989) ("The willingness of Congress to leave a debtor-in-possession is premised on an expectation that current management can be depended upon to carry out the fiduciary responsibilities of a trustee.  And if the debtor-in-possession defaults in this respect,  [s]ection 1104(a)(1) [of the Bankruptcy Code] commands that stewardship of the reorganization effort must be turned over to an independent trustee.") (cited with approval in *In re Marvel Entm't Group, Inc*., 140 F.3d 463, 474 (3d Cir. 1998)).

53.      Section 1104(a)(1) allows the United States Trustee to move the Court, as it has done in the instant motion, for the appointment of a trustee.[3]  If "current management" is found to have

---

[3] Section 1104(e) of the Bankruptcy Code provides that the United States trustee "shall move for the appointment of a trustee under subsection (a) if there are reasonable grounds to suspect that current members of the governing body of the debtor, the debtor's chief executive officer, or members of the governing body who selected the debtor's chief executive or chief financial officer, participated in actual fraud, dishonesty, or criminal conduct in the management of the debtor or the debtor's public financial reporting."  11 U.S.C. § 1104(e).

engaged in "fraud, dishonesty, incompetence, or gross mismanagement" due to acts or omissions which occurred prior to the Petition Date, this Court, pursuant to section 1104(a)(1), must direct the appointment of a trustee. *See In re Sharon Steel Corp.*, 871 F.2d 1217, 1226 (3d Cir. 1989) ("[11 U.S.C. § 1104](a)(1) requires the bankruptcy court, upon motion, to appoint a trustee when the movant has proved 'cause,' which the statute defines to include incompetence and gross mismanagement.").[4] Furthermore, pre-petition conduct alone may provide the basis for a court to appoint a trustee. *See In re Rivermeadows Assocs., Ltd.*, 185 B.R. 615, 619 (Bankr. D. Wyo. 1995) (holding that even though there was no evidence of a post-petition breach of fiduciary duty, pre-petition conduct of debtor's management warranted appointment of a trustee under § 1104(a)(1)).

54.     The Debtor filed for bankruptcy because of serious internal accounting issues. On the Petition Date, the Debtor and its insiders were co-defendants in four lawsuits alleging fraud, breach of fiduciary duty, and/or gross mismanagement. By its own admission, the Debtor learned as early as late 2022 that it had been overpaying some member churches while underpaying others. However, the Debtor did not complete its reconciliation of accounts until after the Petition Date, when it alleged on Schedule A/B that it overpaid more than $6 million to certain member churches. Before this time, the Debtor's own account statements to member churches indicated underpayments. Meanwhile, this reconciliation was completed internally by

---

[4] While the Fifth Circuit in *Cajun Electric* did not specifically address the evidentiary burden issue, it ultimately affirmed the district court's opinion below finding that a movant must meet the "clear and convincing evidence" standard for appointment of a chapter 11 trustee. *In re Cajun Elec. Power Co-op, Inc.,* 191 B.R. 659, 692 (M.D. La.), *overturned* 69 F.3d 746 (5th Cir. 1995), *withdrawn in part on rehearing,* 74 F.3d 599 (5th Cir. 1996)(withdrawing section IV and adopting reasoning of dissent in prior opinion), *cert denied,* 519 U.S. 808 (1996). In light, however, of Supreme Court precedent and section § 1104(e) of the Bankruptcy Code, the better view is that the appropriate burden of proof should be "preponderance of the evidence." *See Tradex Corp. v. Morse*, 339 B.R. 823, 829-32 (D. Mass. 2006) (citing *Grogan v. Garner*, 498 U.S. 279, 286 (1991)).

Debtor's insider and co-defendant Carl Tierney without the benefit of an outside auditor or consultant to oversee the audit.

55.     At best, the Debtor's current management were incompetent or grossly mismanaged the Debtor's business.  At worst, they committed fraud.  The Court need find only incompetency, gross mismanagement, or fraud to direct appointment of a chapter 11 trustee under § 1104(a)(1).

Management conflicted

56.     "Cause" to appoint a trustee may be a reason other than the enumerated factors.  *Oklahoma Ref. Co. v. Blaik (In re Oklahoma Ref. Co.)*, 838 F.2d 1133, 1136 (10th Cir. 1988); *cf. Little Creek Dev. Corp. v. Commonwealth Mortg. Corp. (In re Little Creek Dev. Corp.)*, 779 F.2d 1068, 1072 (5th Cir. 1986) (defining "cause" in context of dismissal statute).

57.     Courts have appointed trustees when the debtor's insiders have conflicts of interest arising from the sale of the debtor's assets.  In *Cajun Electric*, the Fifth Circuit affirmed the appointment of a trustee, in part, because the co-operative members were interested in purchasing part or all of Cajun Electric's assets.  *Cajun Elec. Power Cooperative, Inc. v. Central Louisiana Elec. Co., Inc. (In re Cajun Elec. Power Cooperative, Inc.)*, 69 F.3d 746, 751 (5th Cir. 1995) (Garza, J., dissenting), *adopted as majority opinion on reh'g,* 74 F.3d 599 (5th Cir. 1996).  The Fifth Circuit held that "a trustee may be the only effective way to pursue reorganization" when the management has cross-purposes.  *Cajun Elec.*, 69 F.2d at 751.

58.     Two circuits have held that "cause" exists when appointing a chapter 11 trustee "is the only effective way to pursue reorganization."  *Cajun Elec. Power Coop., Inc. v. Central La. Elec. Coop., Inc. (In re Cajun Elec. Power Coop., Inc.),* 74 F.3d 599, 600 (5th Cir.) (adopting on rehearing the opinion of dissent in 69 F.3d 746, 751), cert. denied, 519 U.S. 808 (1996); *see also In re Marvel Entertainment Group, Inc.*, 140 F.3d 463 (3d Cir. 1998) (adopting reasoning of *Cajun Electric* and

affirming appointment of trustee when acrimony between debtor's management and creditors undermined any ability to prosecute bankruptcy case). While *Cajun Electric* and *Marvel* have factual distinctions, both *Cajun Electric* and *Marvel* focused on the underlying problem that exists in this case: this case can proceed properly through the chapter 11 process only if a chapter 11 trustee is appointed.

59.     The Debtor's insiders are conflicted from directing the Debtor's affairs because of the profound mistrust between its principals and the Debtor's creditors. As previously noted, member churches have filed lawsuits against the Debtor and its insiders alleging fraud, breach of fiduciary trust, and gross mismanagement. After years of sending statements indicating that the Debtor had underpaid member churches, the Debtor and its insiders now allege that these same creditors owe the Debtor money from overpayments after conducting an internal audit without the benefit of an outside accountant or consultant. An independent trustee would be better positioned to review the Debtor's reconciliation and, if necessary, pursue such overpayments.

60.     Cause also exists for the appointment of an independent trustee given conflicts of interest between the Debtor and its former insiders given that the bankruptcy estate may have causes of action against former insiders for gross mismanagement, incompetence, or fraud.

Appointment of a trustee is required if such appointment is in the interests of creditors, equity security holders, and the estate.

61.     Appointment of a chapter 11 trustee is also in the best interests of creditors, equity security holders, and other interests of the estate. The Court should direct the appointment of a chapter 11 trustee to serve the "interests of creditors, any equity security holders, and other interests of the estate." 11 U.S.C. §1104(a)(2).

62.     It is in the best interests of creditors to have an independent trustee assume control over the estate.  Relations between the Debtor and its former customers are acrimonious.  A neutral trustee can determine how best to proceed in investigating the Debtor's pre-petition transactions to determine whether the Debtor overpaid its customers and, if so, how best to pursue any pre-petition transfers.  A chapter 11 trustee would assist in maximizing estate proceeds for the benefit of creditors. Therefore, it is in the best interests of creditors and the estate to appoint a chapter 11 trustee.

## **CONCLUSION**

The United States Trustee respectfully requests that the Court convert this case to chapter 7.  In the alternative, the United States Trustee seeks appointment of a chapter 11 trustee. The United States Trustee further respectfully requests that the Court grant any other relief to which he might be entitled.

DATED: April 11, 2025                    Respectfully submitted,

LISA L. LAMBERT
UNITED STATES TRUSTEE
*/s/ Erin Marie Schmidt*
Erin Marie Schmidt
Trial Attorney
Texas State Bar No. 24033042
Office of the United States Trustee
1100 Commerce Street, Room 976
Dallas, Texas  75242
(214) 767-1075
Erin.Schmidt2@usdoj.gov

**Certificate of Conference**

On April 11, 2025, I reached out to Debtor's counsel Jason Kathman; UCC's counsel Thomas Berghman; and Saddleback Church's counsel Hudson Jobe to confer on the relief requested in this Motion. Mr. Kathman informed me that the Debtor is opposed to the requested relief. I had not heard back from either Messrs. Berghman or Jobe at the time this Motion was filed and therefore do not know their clients' positions.

*/s/ Erin Marie Schmidt*
Erin Marie Schmidt

**Certificate of Service**

I certify that I sent copies of this motion on April 11, 2025, via email to all parties entitled to receive ECF notice in this case and via first class U.S. Mail, postage prepaid, to the parties listed on the attached mailing matrix.

*/s/ Erin Marie Schmidt*
Erin Marie Schmidt